UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

| | | |
|---|---|---|
| GREGORY A. FIGEL #179188, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:04-cv-165 |
| | ) | |
| v. | ) | HON. GORDON J. QUIST |
| | ) | |
| BADAWI ABDELLATIF, et al., | ) | |
| | ) | **OPINION** |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff Gregory A. Figel, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Badawi

Abdellatif and Correctional Medical Services (CMS). Plaintiff alleges in his complaint that Defendant Abdellatif is of Middle Eastern descent and has a strong dislike for Jews and prisoners. Plaintiff states that he is an ethnic Jew, as well as being a prisoner.

Plaintiff alleges that on October 16, 2001, he was transferred from the Standish Correctional Facility (SMF) to the Alger Maximum Correctional Facility (LMF). Within the first few days, Defendant Abdellatif cancelled all of Plaintiff's medical orders and lowered the dosage on some of Plaintiff's medications. Plaintiff complains that this required him to take numerous over the counter medications, which causes problems with his liver. In addition, Plaintiff states that Defendant Abdellatif had the nurse confiscate one of his medications and denied Plaintiff all access to his pain medication, which he had been taking for several years. When Plaintiff told Defendant Abdellatif that he was experiencing pain, Defendant Abdellatif smiled at him and told Plaintiff that there was nothing wrong with him. Plaintiff believes that Defendant Abdellatif is intentionally making him suffer because of his dislike for Jews.

On December 5, 2001, Plaintiff filed a grievance on Defendant Abdellatif for refusing to treat him for spasms in his right eye and "visual flashes of blue dots in both eyes." On February 19, 2002, Plaintiff filed a grievance on Defendant Abdellatif for disregarding his supervisor's orders to make an appointment to follow up on Plaintiff's condition. On February 22, 2002, Plaintiff filed a grievance on CMS for staff corruption and for deliberate indifference. Plaintiff's grievance was rejected by the Director's office on March 22, 2002, as being illegible, vague, and containing extraneous information. Plaintiff was told that he could rewrite and resubmit the grievance, which he did. In 2001 and 2002, Plaintiff made numerous requests to Defendant Abdellatif to check him for a sinus related illness because Plaintiff believed his sinuses may had become infected as a result of exposure to hazardous conditions in administrative segregation. Defendant Abdellatif denied Plaintiff's requests, stating that he was imagining his symptoms.

Plaintiff states that in February of 2002, Defendant Abdellatif went on vacation and another doctor temporarily took his place. During this time, Plaintiff sought medical assistance from this doctor, Dr. Warren. Dr. Warren ordered new medication for Plaintiff, as well as sinus x-rays. The x-rays came back showing rhinitis and sinusitis. When Defendant Abdellatif returned from vacation, he once again lowered the amounts of Plaintiff's medication and did nothing more to help Plaintiff with his sinus problems. On March 18, 2002, Plaintiff filed a grievance on Defendant Abdellatif for staff corruption and medical malpractice. On March 19, 2002, Plaintiff filed a grievance on Defendant Abdellatif for his conduct in cancelling Dr. Warren's prescriptions.

On March 28, 2002, Plaintiff filed a grievance on Defendant Abdellatif for ordering "useless" appointments solely to obtain money from Plaintiff's account. On April 3, 2002, Plaintiff filed a grievance on CMS for staff corruption and deliberate indifference to Plaintiff's serious medical needs. On May 22, 2002, Plaintiff filed a grievance on Defendant Abdellatif for charging Plaintiff's account repeatedly for a chronic condition. The step II response to this grievance, which is attached as an exhibit to Plaintiff's complaint, indicates that Plaintiff had been seen and treated for his complaint of chronic sinus type symptoms numerous times and had had sinus x-rays to check his status. In addition, the response states:

> The patient kited health services on May 21, 2002, complaining of flu-like symptoms. The nurse reviewing the kite scheduled the patient to be seen by the [medical service provider]. The patient was scheduled to be seen in the clinic on May 22, 2002 at 1146. The patient refused to come out of his cell for the scheduled appointment. On May 23, 2002 another kite was received in health services from the patient. He stated in the kite that he did not want to see the doctor if he was going to charge him a copay and not correct his problem. Generally problems that are chronic are not corrected; they are managed with treatments.

(See Step II Grievance Response to LMF-02-05-02322-12D.)

On May 29, 2002, Plaintiff filed a grievance on Defendant Abdellatif for forcing him to go without Drixoral for a period of 13 days. Plaintiff claims that Defendant Abdellatif frequently did this in order to save money for CMS, and that saving money was more important to Defendant Abdellatif than his patient's health. The response to Plaintiff's step II grievance, which is attached as an exhibit to Plaintiff's complaint, reveals that the prescription for the drug was written on May 9, 2002, and instructed Plaintiff to take one pill at bedtime as needed, but no more than 15 pills over a 28-day span. (See Step II Grievance Response to LMF-02-06-02472-12D1.) On December 12, 2002, Plaintiff filed a grievance on Defendant Abdellatif claiming that he refused to treat Plaintiff in retaliation for pending litigation against Defendant Abdellatif. The step II response states that Plaintiff was last seen by Defendant Abdellatif on December 27, 2002, at which time diagnostic testing and medication was ordered. (See Step II Grievance Response to LMF-02-12-5223-12D1.)

Plaintiff alleges that on December 29, 2002, he filed another grievance on Defendant Abdellatif for refusing to provide treatment in retaliation for pending litigation. In his grievance, Plaintiff claimed to have been without Elavil for 10 days and that he had cloudy urine. The step II response stated:

> Investigation reveals the patient was ordered Elavil 25 mg #20 tablets, as needed, to last for six weeks on November 4, 2002. The order was filled and received from the pharmacy on November 12, 2002. Because the medication was ordered to be taken on an as needed basis, the patient was responsible for notifying health care when he needed a refill. The patient requested a refill on December 24, 2002, but the medication could not be ordered until December 26, 2002 due to the pharmacy being closed for the holidays. The medication was received on December 27, 2002.
>
> The patient was evaluated by the [medical service provider] on December 27, 2002. The health record documentation did not indicate any mention of the patient complaining of cloudy urine. There has also been no kite to health services since that visit complaining of any problem involving his urine or other symptoms.

(See Step II Grievance Response to LMF-03-01-0003-28z.)

On March 14, 2003, Plaintiff filed a grievance on Defendant Abdellatif for not ordering a CT scan which had been recommended by Radiologist M. G. Altman, M.D. On May 3, 2004, Plaintiff filed a grievance on CMS because they denied four requests by Dr. Myers for a visual field test and a neurology consultation. Plaintiff states that he has been seen at least six times in the last five years by the eye doctor because of a progressive deterioration in his vision. The step II response indicated that the requests were not approved because there was insufficient information to justify such an approval. (See Step II Grievance Response to LMF-04-05-1395-12D1.)

Plaintiff states that Defendants violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

### II. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

Plaintiff claims that Defendant Abdellatif's conduct was motivated, at least in part, by a desire to retaliate against Plaintiff for filing a lawsuit against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v.*

- 5 -

*Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "Merely alleging the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. April 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has alleged no facts to support his conclusion that Defendant Abdellatif denied him medical treatment in retaliation for Plaintiff filing a lawsuit against him. In fact, the record shows that Defendant Abdellatif ordered medications and diagnostic tests for Plaintiff during the time period when he was allegedly denying Plaintiff treatment. Accordingly, Plaintiff's speculative allegation fails to state a claim.

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted

of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27, 2001; *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *

4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4, 1997). Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Finally, Plaintiff claims that Defendant Abdellatif's conduct was motivated by a desire to discriminate against him because of his Jewish heritage. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are wholly conclusory. He merely states that he is being treated differently because he is Jewish. Plaintiff provides no specific factual allegations to support his contention. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F .3d 716, 726 (6th Cir.1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000), *cert. denied*, 121 S. Ct. 1616 (2001).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  August 5, 2005                                          /s/ Gordon J. Quist
                                                                          GORDON J. QUIST
                                                                      UNITED STATES DISTRICT JUDGE